Mr. Hagler, we'll hear from you when you're ready. I note that you were appointed under the Criminal Justice Act to represent Mr. Fish, is that right? Yes, Your Honor. The court appreciates your willingness to accept the assignment. Thank you, Your Honor. You might adjust that microphone there so we can hear you. May it please the court, as noted, my name is Tom Hagler. I represent the appellant Brock Fish. Mr. Fish is asking for resentencing here because he received additional jail time due to the ineffectiveness of his counsel during the plea negotiations and sentencing phases of his proceedings. And the bottom line here is that Fish's lawyer gave him bad advice and he received additional jail time as a result. In fact, a four level net increase. Fish's lawyer advised him to stipulate to a base level offense of 38 pursuant to a guideline enhancement that did not apply to him. Guideline section 2D1.1A2, I'll call it the death results enhancement. The death results enhancement was not applicable to Fish, his offense of conviction, nor was it advisable to stipulate to such an enhancement considering the Supreme Court's decision in Burrage v. United States. So just, I want to try to figure out, I was a little confused from the order on the certificate of appellability. I was trying to figure out exactly what's before us.  Your view, and I'm going to ask opposing counsel this if he doesn't answer the question, is it's both the stipulation in the original plea agreement and then also the stipulation at the sentencing phase. We think the base offense level is 38. That's right, Your Honor. Given the opportunity to argue against the enhancement, Fish's attorney made no effort to raise the Burrage case and point out to the court that this enhancement required a burden that the government had to prove that it was the express, that the death was the express result of the drugs involved in it. So taking that individually then, there's two separate time periods or it's two separate points during the proceedings that are relevant. With the first one at the plea stage, I don't read that as ever being part of the Section 2255 motion, that that challenge was never made before the district court. Even if you could construe the order as, and the order does say we're not sure what was raised below. Was that ever raised? And if it was, could you tell me where it was raised in the district court? I believe he did raise it in his petition. And as I briefed in section two, as a pro se petitioner, he raised several issues concerning the ineffectiveness of his counsel and asked for a specific remedy that is resentencing. But certainly nothing, he did raise the Burrage issue on the merits. In other words, he says the Burrage, I think that's how you pronounce the case, would entitle me to a lower base offense level because but for causation would be proven. And there are, you're right, I think there's five ineffective assists to counsel claims. But I don't see that connection being made. Oddly, there's all these ineffective assists to counsels, and there's a merits claim on sentencing, but no, none connecting the two. Am I wrong about that? I'm not, let's see. So you're saying that in his petition, he didn't raise that it was ineffective for his lawyer to advise him to stipulate? To stipulate, either, and actually I was going to go to the second one next, but I don't even see it with regard to the stipulation at sentencing. I don't see any argument about ineffective assistance of counsel. And the reason why I'm asking the question is the last sentence of the order says the parties also may address whether the claim was properly raised in the district court. And I didn't see it, I didn't see it in the petition, or the motion, excuse me, it's in section 2255. But I was just wondering if maybe it was raised in some other way in some other paper or whether you had a different opinion about that, whether you could point me to something where either point in time was raised in the district court. I believe it was raised in the petition, and that's where the certificate of appealability sort of brought these issues together to say he had raised the Burridge issue and that it was questionable advice to stipulate to this. And it's my position, our position, that it was patently bad advice. So close enough. You have ineffective assistance of counsel, you have the Burridge issue, it's close enough to bring those two things together. I believe so, your honor. Okay. For a pro se filing. Sure. So what relief is Mr. Fish seeking? Is he trying to vacate the conviction on the theory that he would not have pleaded guilty but for this bad advice? Or is he just seeking a resentencing? He is seeking a resentencing. He's not seeking to vacate the plea, or to withdraw the plea, is that what you're saying? No, your honor, he is accepting responsibility for the drug conspiracy, but he is asserting actual innocence in relation to the death enhancement. And that's why he's asking for resentencing, because- He doesn't want to vacate the plea, he just wants to be resent without the level 38 guideline base level, is that what you're saying? He, I believe he would have been sentenced four levels lower had this enhancement not applied. Right, so that's all you're seeking, is a vacator of the sentence, and an order that he be resentenced. Well, I guess have a new sentencing hearing without the stipulation or something, is that what you're, just trying to understand where you want this to go if you win. Yes, essentially he was asking for the sentence to be vacated and then resentenced in accordance with current guidelines without- But then there'd be a new hearing where the government would have an opportunity to prove the base offense level is 38 based on the resulting in death? Well, that may be what happens, but your honor, had Mr. Fish had competent counsel, she would have investigated the autopsy and forensic reports. And in fact, she never even advised Mr. Fish properly on those results. And I was able to find in the DEA reports, which summarize the autopsies, that both of the decedents had serious health issues. And both of them had heart disease and were middle-aged people that were taking other drugs. And so the burden that Burrage puts on the death results enhancement is that it should be submitted to a jury and found beyond a reasonable doubt. And besides the fact that that key bit of law was not brought up to Mr. Fish or the court, the district court. See, both of the decedents, the PSR states they were suspected drug overdoses, which that right there, I think, puts some doubt on whether or not the drugs were the but-for result of the deaths. And also, one autopsy revealed the decedent had arteriosclerotic, had a cardiovascular disease and pulmonary emphysema at the time of death. And the other autopsy revealed coronary artery disease, the narrowing of the coronary arteries as well as ventricular hypertrophy. That is the enlargement of the chamber wall. Counsel, could you help me with one factual question? because now that you're delving into the facts, which is, and I understand your response may well be, and I want to kind of get past this, that you're asserting ineffective assistive counsel at both stages. At the plea agreement stage and at the other stage, it's sentencing. But in the plea agreement, he agreed or admitted, this is at page two of the plea agreement, that the methamphetamines he sold as part of his conspiracy resulted in serious bodily injury to two people. Now I understand that he didn't say that I was the but-for cause, but that actually is the exact language resulted in that of the statute that the Supreme Court was interpreting in Barrage. And so, what do we make, if you're not trying to get out of the plea agreement, right? You're not trying to get out of the plea agreement. So this gets back to Judge Colleton's question. What do we make of that factual concession? Doesn't that, isn't that the end then of the ineffective assistive counsel claim? Well, I think it was bad advice to concede that point. And I briefed that issue, and there was no reason to concede that. He wasn't gaining anything. And even his counsel, in the transcripts of these hearings, she seems confused about how she thought the enhancement under the statute had been dropped in the charges, and why is it coming up as an enhancement in sentencing? And the fact is that if he had been advised on the government's burden under Barrage, he wouldn't have made that concession. Okay. So, you don't think you need to get out of the plea agreement, then, to get the relief you seek for ineffective assistive counsel? Well, Mr. Fish, in his petition, asked for the sentence to be vacated. So, if we have to go through with another plea agreement, then that may be the case. Also, to kind of go further with that, he made the same admission in the change of plea proceeding. Do you agree with that? Well, I think a guilty- The same factual admission. I think that was ill-advised, and a guilty plea is only constitutionally valid if it represents a voluntary and intelligent choice among the alternative courses of action open to a defendant. And here, Mr. Fish was not provided with all the information concerning the applicability of the guideline and the controlling authority, namely Barrage, or the autopsy results and the questionable cause of death of these individuals. The other question I have is, what about the fact, and how do you handle the fact that he was charged with like six counts? And as a result of counsel's efforts, he ends up pleading to one. Can we look at the overall, in other words, the overall result of the process, instead of taking it apart and looking at the individual elements and simply look at the entirety of the representation and whether it ended up with a beneficial result? Well, I think one issue is the number of counts. It's not unusual in a drug conspiracy like this, but the facts of the case show that Fish was a truck driver, not educated. He's not a criminal mastermind or a drug kingpin here. He resisted cooperation with the government because they wanted him to testify against his own brother, and he refused. And that gave the opportunity for other co-conspirators to point the finger at him. And that left him more exposed until later on in the case where, ultimately in the end, he got this bad advice and took a deal where this death results enhancement didn't really apply to him. So I think we have- You know, the fact that the lawyer apparently didn't understand Burrage seems to be independent of whether he admits the facts. I mean, whether- Well- He might have admitted. I guess what you're saying is maybe he admitted facts that were true, but he shouldn't have admitted them if he'd understood the law better and put the government to its burden on that? That's right, Your Honor. The government's case was not put to test. The adversarial system failed in this instance, and justice was not done. And- Judge Hovland dismissed this on the papers, right? He never had a hearing on this 2255 proceeding. That's right, Your Honor. Yeah, so really what you want is a hearing, I assume. You know, other circuits have remanded for a finding on the but-for cause of death. I think there's a case law that I briefed on that. Other circuits have done that in this case. Well, no, the hearing would be on the effectiveness of the lawyer. We don't have a record on what she told him about Burridge and whether he- No, Your Honor, we have the record that she didn't include these arguments in her filings. She didn't include them in oral arguments at sentencing. In her affidavit defending herself against the ineffective claim, she used that opportunity to throw Mr. Fish under the bus, essentially, didn't say that she brought up any of these issues to advise him. Basically, admitting that she didn't advise him on them. Okay, all right, would you like to save a little time for rebuttal? Yes, I would, Your Honor. Very well, thank you for your argument. Mr. O'Connick, we'll hear from you. May it please the court, opposing counsel. My name is Jonathan O'Connick. I'm an assistant United States attorney for the District of North Dakota, specifically in Bismarck. And the United States would ask that this court affirm the district court's denial of the appellant's 2255 petition. Now, the burden is on the appellant to demonstrate that he received ineffective assistance of counsel. And under Strickland, has to show both deficient performance and prejudice. And I'd like to highlight that the issue before the court is not about the defendant's sentence. It is about whether or not he would have pleaded guilty based upon bad advice. If he would have gotten better advice, he wouldn't have pleaded guilty. And based upon appellant's concession, he is upset about the sentence, not about the actual fact that he pleaded guilty. He is expressing that he is in fact guilty, but he wished he wouldn't have stipulated to a base offense level of 38. And defendants routinely plead guilty across the country every single day to things that the government has to prove beyond a reasonable doubt. And this stipulation to a base offense level of 38 was no different for several reasons. First, the defendant received a bargain for exchange. He received a conviction on one count. He was, the 20 year mandatory minimum on two counts was dismissed. He received only a 10 year mandatory minimum, was able to argue at sentencing for that 10 year amount. And most importantly, he didn't, in the stipulation itself, he prevented the United States from asking for an upward departure. So he gained a bargain. Now he did receive a 240 month sentence, and that is 20 years. However, he was able to argue for something less. And as the district court explained, the defendant or appellant brought six claims of ineffective assistance of counsel. And the United States would argue that he failed to properly raise the issue of whether or not he would have pleaded guilty. He asked, he specifically said that, is the counsel failed to protect his interests? Failed to advocate for him at sentencing? Did it not advise him of a favorable plea? That there was a cumulative effect of counsel's ineffectiveness? That there was a lack of guideline basis, the parties hadn't agreed to a guideline based offense level in the plea? And then ultimately, the sentence enhancement shouldn't apply. Well, that's my question to you is, opposing counsel seems, not concede, that's too strong. But seems to recognize that the precise claim here may not have been raised. But in that last claim, claim six, he raises the sentence enhancement, the base offense level of 38. And then he raises five other ineffective assistance to counsel claims. Close enough? Not close enough? And if it's not close enough, why in a pro se pleading? Your Honor, I would argue that to wear the white hat the United States would admit in a pro se defendant doesn't have the knowledge to raise every claim that would meet the strict standards for appealability. However, we would say that it's close enough for him to determine that this is a sentence I did not want. And nowhere does he state that he would not have pleaded guilty, and I think that's the difference. In a case where a defendant simply states, my lawyer was ineffective. If he lists all of the reasoning, if he would have simply just stated, I wouldn't have pleaded guilty, that would have been enough. But he didn't. He is stating, I did not like the fact that I got a sentence that was 240 months. Because I believe I was promised in the district court to a range of 168 to 210 months. And that was based upon the colloquy that the court had with the defendant. However, it's very clear from the change of plea transcript that the defendant was advised multiple times that the parties were free to argue for additional enhancements. He's instructed by counsel at certain points says, I'm not sure if we're getting a favorable plea. Goes back, speaks with him. The judge then instructs him, you don't have to take this plea. However, it's likely, and everybody had agreed at that point, that the base offense level would be 38. You can ask for any sentence as low as ten years based upon this plea. The government can ask for whatever it wants, including additional enhancements. But nowhere in the 2255, the change of plea, or even sentencing, do we have the defendant, excuse me, the appellant, stating that I would have withdrawn my plea. What about the argument that he got ineffective assistance in stipulating to the level 38? Even assuming his plea is not challenged. Yes, your honor. And I don't believe he received ineffective assistance of counsel because in the appellant's brief, he describes that counsel made him aware of the barrage decision. Now to what detail she made him aware is obviously disputed. But he was aware of the decision. He admits both in a, I guess, a colloquy where the United States attorney speaks to the court about the factual basis. He agrees that that was an accurate factual basis to summarizing the but for causation of serious bodily injury, where two people had died as a result of the methamphetamine distribution by the defendant. And he signs a stipulation several months later in March of 2015, and he does that, and he gains an additional benefit. In the original plea agreement, although there weren't very many limitations, there was the limitation of we're going to dismiss several charges. You don't face a 20 year mandatory minimum, you face a 10 year mandatory minimum. However, in the stipulation, it goes further to say, we're agreeing it's a base offense level of 38. However, United States will not ask for a departure upward for death or serious bodily injury. And I believe in the joint supplement, joint appendix, there is sufficient evidence where the autopsy reports describe how each individual died as a result of methamphetamine toxicity. In Ms. Neubauer's affidavit, she describes that she allowed the defendant or appellant to come to her office once a week, review the information, the discovery on her computer. And it appears that the defendant is upset with the ultimate result of the sentence. And although I would agree that there's a certain part where every client would like to have a sentence of 168 to 210 months. That's different than whether or not his attorney was ineffective. Attorneys are presumed to provide effective assistance of counsel to their clients. In this case, Ms. Neubauer argued, she struck a favorable deal where the appellant lost, I believe, five counts. Allowed to argue for a ten year sentence as opposed to a 20 year mandatory minimum. And she actually did so well that she actually got him a 240 month sentence, which was below the 262 to 327 guideline. And in terms of, that's the deficient performance, that she was not deficient, but even so, appellant suffered no prejudice. He has stated that he doesn't really want to withdraw his plea, he wants a different sentence. And had he gone back to the court, let's assume that the court would have looked at it without that base offense level of 38 for the but-for causation of death or serious bodily injury, he would have been at a base offense level of 36. Based upon the drug quantity and the drug minus two project, the guideline revision reducing drug quantity guidelines, he would have had a range of 210 to 262 months. He received a sentence of 240 months, which is within, in the middle of that guideline range. And based on that, the defendant did not receive any prejudice. And at this point, the appellant feels that he did not receive a fair sentence. However, he was able to not have the 20 year mandatory minimum and was able to argue during sentencing for much less. And at this point, unfortunately, the defendant is not happy with the ultimate result of the sentence, but that doesn't change the fact that his attorney was effective, represented him well. And ultimately, he's not prejudiced because he would have gotten a sentence within a range of 210 to 262 months, even assuming the base offense level 38 for death or serious bodily injury did not apply. And pending your questions, that's all I have, your honors. All right, thank you for your argument. Would you care to make a brief rebuttal? Mr. Hagler, we'll give you one minute. After reviewing the petition here I see I think in ground five, the appellant was raising the issue of ineffective assistance and saying that he was coerced into making this plea, and I think that's where we get the idea.   That he wouldn't have pleaded guilty but for the bad advice of his counsel. What page are you citing? That's page 120 of the joint appendix. Now that's the plea, but I thought you said on your opening argument that he doesn't want to vacate the plea. Your honor, if that's the better option for him to vacate the plea and come back and negotiate a new plea, I assume it would be with the public defender's office in North Dakota. That may be his better option, but he does feel that he did, basically had a four level increase applied to him because of the bad advice. And that's really at the root of the problem. And I would like to point out that in the brief, we do say that his counsel mentioned Burrage to him. But she only said the name, he remembers her saying that name. She never advised him on the but for burden that the government would carry or how it would affect his case. And again, I think he did not receive a favorable deal. The mandatory minimum that the government refers to, again, in a jury trial, they would have to prove that the deaths were the but for result of the drugs. And I don't think it's there based on what's in the summaries of the autopsy reports. All right, thank you for your argument, Mr. Hagler. The case is submitted. The court will file an opinion in due course. And counsel are excused. Thank you.